IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MOSAIC LEASING, LLC, | |
|     Plaintiff/Counterdefendant, | 8:24CV138 |
| v. | |
| JET LINX AVIATION, LLC, | MEMORANDUM AND ORDER |
|     Defendant/Counterclaimant, | |
| and | |
| JET LINX AVIATION, LLC, | |
|     Third-Party Plaintiff, | |
| v. | |
| DAVID M. MAURA, | |
|     Third-Party Defendant. | |

This matter is back before the Court on third-party defendant David M. Maura's ("Maura") Motion to Dismiss (Filing No. 22) the third-party complaint (Filing No. 13) filed by defendant/counterclaimant and third-party plaintiff Jet Linx Aviation, LLC ("Jet Linx") for lack of personal jurisdiction and failure to state a claim.[1] *See* Fed. R. Civ. P. 12(b)(2), (6). Maura is the sole member and chief executive officer ("CEO") of plaintiff/counterdefendant Mosaic Leasing, LLC ("Mosaic").

On October 22, 2021, Maura, as Mosaic's CEO, executed a Dry Lease and Aircraft Management Agreement (the "Agreement") between Mosaic and Jet Linx. Under that

---

[1]The Court previously considered Maura's motion on October 7, 2024 (Filing No. 28). Additional facts and analysis can be found there.

Agreement, Jet Linx agreed to manage and operate a 1999 Citation X aircraft (the "Aircraft") owned by Mosaic in exchange for periodic payments drawn from a bank account in Maura's name.  Mosaic and Jet Linx were the only named parties to the Agreement, which had an initial term of one year.  In Section 13.6 of the Agreement, the named parties agreed (1) any disputes would be heard in a Nebraska court, (2) Nebraska law would apply, and (3) the parties were subject to personal jurisdiction in a Nebraska court for any enforcement action.

In time, the deal went south.  Mosaic sued Jet Linx in this Court for breach of contract and other claims, asserting diversity jurisdiction under 28 U.S.C. § 1332(a)(1) (Filing No. 12).  Mosaic relies on Section 13.6 to establish personal jurisdiction for Jet Linx.

Jet Linx answered Mosaic's amended pleading, asserted affirmative defenses, and filed a counterclaim for breach of contract against Mosaic (Filing No. 13).  It also filed a third-party complaint against Maura alleging he was personally liable for the amounts Mosaic owed to Jet Linx because he did not operate "Mosaic as a separate entity" and "assumed the financial responsibility of Mosaic's Agreement with Jet Linx."  Jet Linx seeks "not less than $307,525.13" in damages from Mosaic and Maura.

That claim is at issue here.  Maura, a Florida citizen, maintains that he acted only as Mosaic's CEO in signing the Agreement, not in his personal capacity, and thus is not personally liable under that Agreement or subject to personal jurisdiction in Nebraska.  The critical question for personal jurisdiction is whether Maura's own "conduct and connection with [Nebraska] are such that he should reasonably anticipate being haled into court [here]."  *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)); *see also Henry L. Firm v. Cuker Interactive, LLC*, 950 F.3d 528, 532 (8th Cir. 2020) ("The Supreme Court has directed courts to consider and assess individually each defendant's contacts with the forum state").  As Maura sees it, "there is no evidence that [he] purposefully directed his activities towards Nebraska or

2

engaged in conduct that would establish sufficient minimum contacts with Nebraska." *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (clarifying the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there") (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 319 (1980)).

Jet Linx bears the burden of establishing the Court's personal jurisdiction over Maura. *See Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). To meet that burden, the plaintiff initially "must plead 'sufficient facts to support a reasonable inference that [Maura] can be subjected to jurisdiction within the state.'" *Id.* (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011)). When evidence is presented at trial or a hearing, the plaintiff "must establish jurisdiction by a preponderance of the evidence." *Id.* Standing alone, a "contract with an out-of-state party" does not "automatically establish sufficient minimum contacts in [that] party's home forum." *Burger King*, 471 U.S. at 478; *accord Henry*, 950 F.3d at 532 ("A defendant does not subject itself to jurisdiction in a forum state by merely contracting with a resident of that state.").

Besides admitting that the Agreement language quoted in Mosaic's amended complaint "supports personal jurisdiction over the parties and venue in this matter," Jet Linx's pleading says very little about personal jurisdiction, particularly as it relates to Maura. In response to Mosaic's motion to dismiss, Jet Linx asserts two basic grounds for personal jurisdiction. First, Jet Linx argues Maura is subject to jurisdiction in Nebraska because he "chose to interact directly with Jet Linx by using his personal bank account to pay for Jet Linx services and having certain services invoiced directly to him." Jet Linx further argues Maura "personally took responsibility for payment of Mosaic's debts to Jet Linx and personally took flights" on the Aircraft while aware Jet Linx's headquarters was in Nebraska. In Jet Linx's view, "[w]hen Maura identified himself as the party financially responsible for payment under the Agreement, he became a party to the Agreement and

3

should be bound by" Section 13.6's personal-jurisdiction waiver or at least should have known he could face suit in Nebraska.

Second, Jet Linx attempts to pierce the corporate veil, arguing Mosaic is nothing more than Maura's alter ego. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 (2011) (discussing piercing the corporate veil for jurisdictional purposes); *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (explaining a plaintiff relying on an alter-ego theory of personal jurisdiction must be able to pierce the corporate veil under the applicable state law). If a corporation in an individual's "alter ego, its contacts are his and due process is satisfied." *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975).

As the Court noted in its prior ruling, it is not easy to pierce the corporate veil in Nebraska and hold "the individual members and managers of a limited liability company . . . liable for a debt, obligation, or liability of the company." *Thomas & Thomas Ct. Reps., L.L.C. v. Switzer*, 810 N.W.2d 677, 683, 685 (Neb. 2012). Under Nebraska law, a corporate entity is generally "viewed as a complete and separate entity from its shareholders and officers." *407 N 117 St., LLC v. Harper*, 993 N.W.2d 462, 849 (Neb. 2023). "A court will disregard a corporation's identity only where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another." *Wolf v. Walt*, 530 N.W.2d 890, 896 (Neb. 1995). Relevant factors include

> (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.

*Christian v. Smith*, 759 N.W.2d 447, 462 (Neb. 2008). Inadequate capitalization "is measured at the time of incorporation" and "turns on the nature of the business of the particular corporation." *Id.*

Thoroughly analyzing those factors on initial review, the Court found "Jet Linx's jurisdictional arguments" unpersuasive, particularly in light of its vague allegations of impropriety, unsupported legal assertions, and the high bar it faced "to pierce the corporate veil or otherwise bind an executive to a contract he expressly negotiated and signed on behalf of a named party." *See Thomas*, 810 N.W.2d at 685 (refusing to pierce where it found no evidence the member of a limited liability company acted in his individual capacity and no "evidence of fraud or injustice"); *Christian*, 759 N.W.2d at 463. The Court further faulted Jet Linx for failing to identify Maura's own "meaningful 'contacts, ties, or relations'" with *Nebraska* sufficient to support haling him into Court here. *Burger King*, 471 U.S. at 471-72 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)); *see also Henry,* 950 F.3d at 532.

Based primarily on Jet Linx's assertion that Maura alone had information vital to establishing personal jurisdiction, the Court found "sufficient reason to permit Jet Linx to conduct limited jurisdictional discovery to better evaluate Maura's own contacts with Nebraska related to this litigation" and this Court's personal jurisdiction over him. *See Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008). Having completed that discovery, Jet Linx has submitted "supplemental argument and authority in opposition to" Maura's motion to dismiss (Filing No. 35). Maura has submitted a reply (Filing No. 39). Neither party has requested an in-person hearing. *See, e.g.*, *Hawkeye Gold, LLC v. China Nat'l Materials Indus. Imp. & Exp. Corp.*, 89 F.4th 1023, 1031 (8th Cir. 2023) (noting "not all evidentiary hearings involve evidence taken orally in open court").

In its supplemental briefing, Jet Linx primarily argues personal jurisdiction is proper because "Mosaic is nothing more than the alter ego of Mr. Maura." As before, Jet Linx

highlights Maura's sole membership in Mosaic, his personal use of the Aircraft, the designation of his bank account under the Agreement, and the money transfers to Jet Linx in Nebraska. Jet Linx also reports the Aircraft was Mosaic's only asset and that it was sold on or about December 1, 2023, without any of the proceeds used to pay Jet Linx. Finally, Jet Linx notes that Mosaic did not produce certain financial records between 2021 and 2023.

Turning to the factors identified in *Christian*, Jet Linx—though apparently happy with the Agreement's terms at execution and unfazed by the lack of any sort of personal guaranty from Maura—contends Mosaic was "grossly inadequately capitalized" because Mosaic ostensibly had no bank account and made payments solely from Maura's account. It further contends "there is at least the strong suggestion that Mosaic was insolvent" because "Maura was personally paying for all of Mosaic's expenses." With respect to the last two factors, Jet Linx contends Maura's actions over the course of the Agreement and statements about the Aircraft indicate he "made no pretense that the [A]ircraft was anything other than his own personal property." In Jet Linx's view, "Mosaic was nothing more than a façade that would allow Maura and his family to have use of an aircraft."

Jet Linx's jurisdictional arguments again fall short. First, it misconstrues and misapplies some of the *Christian* factors. Under Nebraska law, "inadequate capitalization, means capitalization very small in relation to the nature of the business of the corporation and the risks entailed." *Christian*, 759 N.W.2d at 462. It "is measured at the time of incorporation." *Id.* Jet Linx's scant evidence of Mosaic's capitalization simply does not show the requisite relationship at the pertinent time. Jet Linx plausibly complains that Maura improperly failed to answer an interrogatory question about the nature of Mosaic's business. But it took no steps to resolve the discovery dispute in accordance with the federal rules and local case-management practices. *See* Fed. R. Civ. P. 37. An unresolved discovery dispute is not strong evidence of gross undercapitalization.

What's more, Jet Linx states that Mosaic formed in August 2021 and then purchased the Aircraft shortly before entering the Agreement. Yet Jet Linx does not account for the Aircraft as a potential asset at that time or when Mosaic allegedly incurred the debts at issue in this case. *Cf. Christian*, 759 N.W.2d at 462 ("A corporation which was adequately capitalized when formed but which has suffered losses is not necessarily undercapitalized."). Instead, Jet Linx speculates about a purported lack of capital, fixates on Maura's bank account (the payment method it accepted with eyes open when it executed the Agreement), and notes the sale of the Aircraft on December 1, 2023, months after the Agreement terminated. But none of that shows "grossly inadequate capitalization" at formation nor supports Jet Linx's "suggestion" that Mosaic was insolvent when it incurred debts to Jet Linx. *Id.* ("A corporation is insolvent if it is unable to pay its debts as they become due in the usual course of its business, or if it has an excess of liabilities of the corporation over its assets at a fair valuation.").

Maura's personal use of the Aircraft and direct payments do—at least to some degree—support piercing the corporate veil. But in these circumstances, they are not enough to show Mosaic "is a mere façade for" Maura's "personal dealings," that he carries on Mosaic's operations in disregard of its separate legal status, or that his use of the Aircraft perpetuated a fraud against Jet Linx. *Id.*

Piercing the veil "is a drastic approach authorized only in the most extreme situations." *Lakota*, 519 F.2d at 637 (analyzing *Karlin v. Avis*, 326 F.Supp. 1325 (E.D.N.Y. 1971)). The Court may only disregard Mosaic's separate status if it "is a mere shell, serving no legitimate business purpose, and is used as an intermediary to perpetuate fraud on the creditors." *Christian*, 759 N.W.2d at 463. Jet Linx has not—on this record—adduced sufficient evidence to support that conclusion. *See id.*; *Creative Calling*, 799 F.3d at 979; *Bradbury v. Network Enters., Inc.*, No. 4:12-CV-575 CEJ, 2013 WL 587884, at *2 (E.D. Mo. Feb. 13, 2013) ("Courts are especially hesitant to pierce the veil in suits based in contract rather than tort, since the party suing on a contract is more likely to have

7

considered, ex ante, the undercapitalization and shoddy corporate structure of the other party.").

Unable to bind Maura to the Agreement or pierce the corporate veil, Jet Linx is left with its argument based on Maura's own contacts with the state of Nebraska. *See*, *e.g.*, *Shaffer v. Heitner*, 433 U.S. 186, 204 & n.19 (1977) (emphasizing the centrality of "the relationship among the defendant, the forum, and the litigation" in evaluating personal jurisdiction and explaining that the differences between a corporation and an individual defendant could lead to a different conclusion depending on the circumstances). In its prior Memorandum and Order, the Court carefully laid out the framework for establishing specific jurisdiction and cautioned Jet Linx that its arguments were unpersuasive partly because its "vague allegations" said "little about Maura's own contacts with *Nebraska*."

Despite that warning and the completion of jurisdictional discovery, Jet Linx makes the exact argument in its supplemental brief that failed on initial review. The argument is still not persuasive.

None of this is to say anything about the potential merits of any claim Jet Linx might have against Maura or Maura's assertion that Jet Linx fails to state a claim. *See* Fed. R. Civ. P 12(b)(6). This decision is limited to the issue of personal jurisdiction. The Court expresses no opinion as to the merits of any claim.

In light of the foregoing,

IT IS ORDERED:
1. Third-party defendant David M. Maura's Motion to Dismiss (Filing No. 22) is granted in part and denied in part.
2. Maura's request to dismiss the third-party complaint for lack of personal jurisdiction is granted; his request to dismiss for failure to state a claim is denied.
3. Plaintiff Jet Linx Aviation, LLC's third-party complaint against Maura is dismissed without prejudice.

Dated this 7th day of February 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge